ADDY, Respondent, vs. THE CITY OF JANESVILLE, Appellant.

*December 14, 1887 — January 10, 1888.*

*(1) Municipal corporations: Unauthorized change of grade of street: Damage from surface water. (2, 3) Evidence: Authority of officer doing work: Insufficiency of culvert. (4) Evidence: Immaterial error. (5) Instructions to jury: Irrelevancy.*

1. Where a city, by unlawfully raising a street above the established grade, causes surface water to flow or accumulate upon an abutting lot, it is liable to the lot-owner for the injury occasioned thereby.

---

2. It is competent to show by parol that a certain person acted as the street commissioner of a city, and a report referring to the grading of a certain street, made by him as street commissioner to the common council and placed on file in the city clerk's office, is admissible to show that such grading was done by the authority of the city.

3. Where the complaint alleges that a city unlawfully raised a street above the established grade without providing proper escapes for the surface water which was thereby caused to flow and accumulate upon the plaintiff's lot, the insufficiency of a culvert by which such water might have been conducted away may be shown.

4. The admission of incompetent testimony to establish a fact which was conclusively proved by other evidence which was competent, is an immaterial error.

5. It is not error to refuse to give instructions containing irrelevant matter which is liable to confuse the jury, if all the law in such instructions which is pertinent to the case is given in the general charge.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages for injuries by surface water to certain property in the defendant city. The facts will sufficiently appear from the opinion. The plaintiff had a verdict for $500 damages, and from the judgment entered thereon the defendant appealed.

*Charles E. Pierce*, for the appellant, contended, *inter alia*, that the defendant is not bound to drain surface water from off the plaintiff's premises; neither is it bound to so construct and maintain its streets that the plaintiff may drain the surface water that may accumulate on her premises into the streets. *Waters v. Bay View*, 61 Wis. 642, 644; *Lynch v. Mayor*, 76 N. Y. 60. The defendant has the same right to prevent surface water accumulating on lands adjoining its streets from flowing upon its streets, that an adjoining owner has to prevent the surface water from another adjoining owner's land from coming upon his premises. *Hoyt v. Hudson*, 27 Wis. 656; *Waters v. Bay View*, 61 id. 642; *Heth v. Fond du Lac*, 63 id. 228. The fact that the amount

of surface water on plaintiff's lot was increased by the grading or otherwise improving of the street would not. render the defendant liable. Gould on Waters, secs. 269, 270; *Gould v. Booth*, 66 N. Y. 62; *Lynch v. Mayor*, 76 id. 60; *Wilson v. Mayor*, 1 Denio, 595; *Flagg v. Worcester*, 13 Gray, 601; *Lessard v. Stram*, 62 Wis. 112; *Hanlin v. C. & N. W. R. Co.* 61 id. 515; *O'Connor v. F., A. & P. R. Co.* 52 id. 526; *Eulrich v. Richter*, 37 id. 226; *Fryer v. Warne*, 29 id. 511; *Gannon v. Hargadon*, 10 Allen, 106; *Turner v. Darthmouth*, 13 id. 291; *Barry v. Lowell*, 8 id. 127; *Parks v. Newburyport*, 10 Gray, 28; *Ramsdale v. Foote*, 55 Wis. 560. Nor would the city be liable for any defective plan of drainage that it might adopt. *Urquhart v. Ogdensburg*, 91 N. Y. 67; *Gilluly v. Madison*, 63 Wis. 518; *Wilson v. Mayor*, 1 Denio, 595. No competent evidence was offered tending to show that James Church was an officer of the city. The only proper way to prove that fact was by the records of the city. Nor did the plaintiff show that the common council ever authorized the work in question. The report of the street commissioner was inadmissible because it was not shown to have been made by Church while he was an officer of the city and while acting as such officer, or to have been made in reference to work which he was by law authorized to do, and for the further reason that the report fails to show that it was ever adopted or ratified or in any way approved of.

For the respondent there was a brief by *Wilson Lane*, attorney, and *Ogden H. Fethers*, of counsel, and oral argument by *Mr. Fethers.*

COLE, C. J. The first two errors assigned are: Overruling the objection to any evidence under the complaint; and denying the motion for a nonsuit. The first inquiry, then, is as to the sufficiency of the complaint. The plaintiff owns, and has for several years resided in, a dwelling-house sit-

uated on lot 6, block 38, on North Main street, in the city of Janesville. It is alleged in the complaint that the defendant city from time to time, during the last five years, and more particularly during the spring and summer of 1882, wrongfully, unlawfully, and negligently, to the great injury and damage of the plaintiff, hauled, or caused to be hauled, a great quantity of gravel, earth, and other material, and caused the same to be deposited in the street adjacent to her premises, thereby raising the street from one to three feet above the lawfully established grade; that the defendant wrongfully and negligently allowed the water flowing from the north and east of the plaintiff's premises to flow in upon her lot, by reason of the unlawful height of the street, no proper escapes having been provided for carrying off such water, which accumulated during portions of each year in great quantities in and upon her lot, filling the cellar of her house, undermining and injuring the same, discommoding the plaintiff in the use and enjoyment of her property, rendering the residence unhealthy, and depreciating its value. These are the principal averments of the complaint upon which damages are claimed.

It was objected here, as it was in the court below, that no actionable injury is stated. The objection was overruled by the trial court, and we think properly so. It is said the complaint claims damages only for injuries caused by the defendant permitting surface water to flow upon the premises and to become dammed up thereon, and that for an injury caused by surface water purely no damages can be recovered. But the allegation is that the earth and material were unlawfully and negligently deposited in the street adjacent to the premises, so as to raise it above the lawfully established grade, and that this caused the injury. The fact is proven beyond all dispute that the grade of North Main street was established by the common council in September, 1855. In 1867, the dwelling-house was erected

and improvements made upon the lot, conforming to this grade. The lot was then considerably above the grade, and whatever surface water came upon it flowed off over the street, west to the river. True, it does not appear that the street was worked by the city to the established grade, nor do we deem that a material fact. Owners of. lots on the street had the right to make improvements upon the faith that the grade would be permanent, or at least only changed according to the provisions of the charter. There is no pretense whatever that the city officers complied with the provisions of the charter which authorized a change of the established grade. See subch. 7 of the charter (ch. 221, Laws of 1882). Consequently the city became liable to a lot-owner for damages to his lot sustained by reason of such change. Sec. 1, subch. 7, *supra.*

This was the doctrine laid down in *Crossett v. Janesville,* 28 Wis. 420, under this provision of the city charter. There the common council attempted to change the established grade without the recommendation of a majority of the adjacent lot-owners of property situated on the street, which authorized the grading according to the changed grade; and this court held the city liable to the lot-owner for the injury to his lot caused by such grading. The principle of that decision is strictly applicable to the case at bar. The same. doctrine is affirmed in *Meinzer v. Racine,* 68 Wis. 241, where it is held that an action will lie against a city for injuries to a lot caused by a change of the grade of a street otherwise than as authorized by law and in violation of the restrictions of the charter. So the question as to the liability of the city, under such circumstances, may be deemed settled by these decisions, and does not require further discussion.

But the contention of the appellant's counsel is, that upon well-settled principles of law the city had the clear right to prevent surface water which accumulated on lots adjoining

its streets from flowing onto such streets; the same right that an adjoining owner has to prevent the surface water from another adjoining owner's land from coming upon his premises.   The decisions of *Hoyt v. Hudson*, 27 Wis. 656; *Waters v. Bay View*, 61 Wis. 642, and *Heth v. Fond du Lac*, 63 Wis. 228, are cited in support of that proposition. These cases are inapplicable to the present, for the obvious reason that here the common council had no authority to change the grade without taking the steps prescribed by the charter to give them power so to do.   The complaint states that they proceeded unlawfully and negligently in depositing the material in the street, and so raising it as to prevent the surface water from flowing off over the street as it was accustomed to do, without providing proper escapes to carry off the water, and this allegation is abundantly sustained by the proof.   The charter clearly prohibited the common council from changing the grade without the requisite recommendation of the lot-owners asking for such change.   No such restriction upon the power of the city or village authorities existed in the cases above cited. The city authorities could not raise the grade of the street except as authorized in order to prevent the flow of surface water over it.   Their power in that regard was restricted as we have already pointed out.   And, as was said by the learned circuit judge, it becomes immaterial to state or consider what the law would have been as to their right to guard the street against surface water if they had taken the requisite steps under the charter to raise the grade.   As the case stands, the city authorities proceeded unlawfully and in direct violation of the provisions of the charter in doing this work.

The third and fifth errors assigned relate to admitting in evidence, against the defendant's objection, conversations had by the plaintiff with James Church, since deceased, and the oral testimony to prove that Church held the office

of street commissioner in 1881–82. Church was the street commissioner who attended to the work of filling the street in front of the plaintiff's premises. The plaintiff testified that she remonstrated with him and tried to stop the filling because it would "drown her out." This evidence was objected to because Church, being dead, could not testify in the matter. We do not deem this testimony at all material. Its plain object was to show that the work had been done by the authority of the city. But this fact was established by overwhelming testimony and could not be gainsaid. Church was an officer of the city (sec. 2, subch. 2, of the charter), and it was competent to show by parol that he acted as street commissioner. Indeed, it appears that he employed laborers, who worked under him, and who were paid out of the city treasury. As street commissioner he made a report to the common council referring to this filling and grading of North Main street, which report was received and placed on file in the city clerk's office. The report was competent evidence in the case, because it was presumably made by Mr. Church while he was an officer of the city and acting as street commissioner. The labor done under the supervision of the street commissioner upon the streets that year was paid for every two weeks, as the city clerk testified; and the labor and expense of filling the street adjoining the plaintiff's lot was doubtless paid for by the city. It seems like trifling with the intelligence of a court to claim, upon the evidence in this record, that it does not appear that the filling of the street adjoining plaintiff's lot was done by the authority of the city. And we may remark in this connection that the witness Nowlan — who was a member of the street and bridge committee — testified that Main street was raised in 1881–82 to prevent the water of the river from backing up into it. So it appears this work was not done to guard the street from surface water, as the city attorney now claims.

Again, it is said the court erred in permitting proof to be made as to the insufficiency of the culvert on Main and North Fifth streets, because no foundation for such evidence was laid under the allegations of the complaint. But the complaint certainly alleged that the defendant wrongfully allowed water, flowing from the north and east of plaintiff's premises, to flow upon her lot without providing proper escapes for carrying it off. This shows that the objection to the evidence was not well taken.

The court was asked to give some instructions on behalf of the defendant which it refused to give. This ruling is assigned as error. All the law in these instructions which is pertinent to the case is embraced in the general charge. It was idle to confuse the jury with the law as to a watercourse, since it was not pretended by any one that the water in question was anything but surface water. The court did distinctly charge the jury that the water coming upon the plaintiff's premises was surface water, and was not a creek or watercourse; but though it was mere surface water, still if there was a raising of the street in question above the legally established grade, without sufficient culverts being provided to allow the surface water to pass off as it did before the street was raised, and by such means the surface water was set back upon the plaintiff's lot and retained there longer than it was prior to the raising of the street, rendering her premises less valuable than they were before, the plaintiff was entitled to recover for all damages which naturally resulted to her from such flowage or retention of the waters upon her premises. This charge is excepted to, but it is so obviously correct that it needs no comment. The court further charged that the city had shown no authority whatever for raising the grade; and if such raising of the grade without sufficient culverts or gutters to carry off the waters as rapidly as they were carried off before, produced injury to the plaintiff, the raising was, as to her, unlawful;

and if done by the city, or if the city ratified the raising of the grade after it was done by paying for the work, the city was liable to her for all damages which naturally resulted from the raising of the grade, with its insufficient gutters or culverts to conduct the waters as rapidly as they flowed off before the grade was raised; that the city had shown no authority for raising the grade, and the evidence tends to show that the requisite steps had not been taken authorizing the city to raise the grade of the street. This charge is likewise excepted to, but it is clearly in harmony with the views which we have expressed above, and therefore needs no further comment.

This disposes of all the material points in the case, and it follows that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.